FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Receiver for First South, F.A., Plaintiffs,

v.

DILLON CONSTRUCTION COMPANY, INC.; Gerald W. Dillon; Phyllis B. Dillon; Rock Venture; Home Federal Savings & Loan Association, Defendants.

Nos. LR–C–87–478, LR–C–87–621.

United States District Court, E.D. Arkansas, W.D.

Feb. 29, 1988.

**1360**

Robert L. Brown, T. Martin Davis, Little Rock, Ark., for Home Federal Sav. & Loan Ass'n.

Don N. Curdie, Eichembaum, Scott, Miller, Little Rock, Ark., for Federal Sav. & Loan Ins. Corp.

Robert J. Brown, Little Rock, Ark., for Dillon Const. Co. and Phyllis Dillon.

## ORDER

HENRY WOODS, District Judge.

Pending now are the motions of the Federal Savings and Loan Insurance Corporation (FSLIC), in its capacity as receiver for FirstSouth, F.A., for: (1) reconsideration of this court's order of December 16, 1987; (2) summary judgment; and (3) dismissal of the counterclaim filed against it by Home Federal Savings and Loan Association (Home). Also pending is the motion of the separate defendants, Dillon Construction Company, Inc., Gerald W. Dillon and Phyllis B. Dillon (the Dillons), to conform the pleadings to the proof to seek equitable relief. The court's rulings are as follows.

This is an action by the Federal Savings and Loan Insurance Corporation (FSLIC), in its capacity as Receiver for FirstSouth, F.A., to foreclose on five notes and mortgages executed in its favor by the Dillon defendants. Home Federal Savings and Loan is a party to this action only because it claims an interest in one of the properties on which the FSLIC seeks to foreclose. The facts as they apply to the various motions pending herein, are set out more particularly below.

## I. The FSLIC's Motion to Reconsider

In its December 16, 1987, order the court denied the FSLIC's motion to strike the Dillon's affirmative defense of usury. The court's rationale was that the leading case of *North Mississippi Savings and Loan v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), held only that "claims" against the Receiver may not be pursued in federal court and that an affirmative defense is not in any sense a claim against the Receiver. The FSLIC now asks the court to reconsider in light of the decision in *FirstSouth, F.A. v. LaSalle National Bank,* No. 86–C–10247, slip op. (N.D.Ill. Sept. 9, 1987) [Available on WESTLAW, 1987 WL 16895]. The court finds

*LaSalle* unpersuasive and declines to reconsider on that basis.[1]

But the FSLIC also advances a second argument in support of its motion to reconsider which was not raised in its original motion. Relying on a body of common law emanating from the Supreme Court's decision in *D'Oench, Duhme and Company, Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), it is the FSLIC's position that the Dillons' usury defense cannot be asserted against it because it is based on an agreement not found in FirstSouth's records. In an opinion designated for publication, this court recently held that the *D'Oench* doctrine applies to the FSLIC as well as the FDIC and that a party is estopped from asserting a "side agreement" as a defense to a facially valid note in the hands of the Receiver. *See Dill v. FSLIC*, 678 F.Supp. 1404 (E.D.Ark.1988). A discussion of that doctrine will not be reiterated here, but the facts relevant to its application will be briefly discussed.

The Dillons state first, by way of affidavit of Gerald W. Dillon, that on June 17, 1985 they signed an agreement to purchase 37 lots in Otter Creek Community, an Addition to the City of Little Rock, Arkansas, from Rock Venture, a joint venture. The purchase price was $463,900 with First-South financing $364,000 of the purchase price at Bank of America's prime rate plus 200 basis points, and Rock Venture carrying a note for $99,000. Second, the Dillons state that a special condition of the June 17 agreement was that they receive additional construction financing from FirstSouth according to the February 11, 1985, construction loan guidelines attached to the agreement. Those guidelines, which are typed on an unsigned FirstSouth letterhead, provide that FirstSouth's construction loan interest rate is Bank of America prime. And, third, the Dillons maintain that the special conditions of the June 17 contract reflect FirstSouth's agreement to provide them with construction loans on the 37 lots at Bank of America prime with principal and interest on the original loan not being made payable until the lots were actually "taken down" with the construction loans.

The Dillons argue now that the actual loans from FirstSouth were usurious because interest was charged on the original purchase money loan before the lots were taken down and interest on the construction loans was at Bank of America prime plus 200 basis points, all in violation of the special conditions to the June 17 contract.[2] It is the court's opinion that if the June 17 contract was binding on FirstSouth and was made a part of the loan file, the Dillons would no doubt be entitled to a hearing on their defense, but the contract on its face was neither binding on FirstSouth nor was it a part of the loan file.

The June 17 agreement was executed by the Dillons, Dan R. Robinson, II, a real estate broker with Fausett & Company, Inc., and Charles Rush as "Authorized Officer/Agent" of Rock Venture. Rush also happens to be a Vice President of First-South, and Rock Venture is a joint venture of FirstSouth's service corporation, First Southern Service Corporation, but nonetheless the agreement was never executed by anyone purporting to represent First-South. The fact that Rush was an officer of both FirstSouth and Rock Venture, and that Rock Venture was a partnership of FirstSouth's service corporation, lends credibility to the Dillons' claims. However, the question before the court does not allow an examination of the merits of the Dillons' defense. And the court need not

---

1. In *LaSalle* the court dismissed all claims, counterclaims and affirmative defenses asserted against the FSLIC. But in that case, as distinguished from the one at bar, the affirmative defenses dismissed were those "seeking to enforce claims against the property." Slip op. at 6. Here, the Dillons are not seeking to enforce any claim against the Receiver. Rather, they merely assert that the underlying transaction on which the FSLIC bases its claim is void as a matter of law.

2. The Dillons' original usury theory was that FirstSouth required them to maintain an offsetting account with FirstSouth in an amount equal to 10% of the loan and that this enhanced the yield on the loan in violation of state law. This theory is not addressed in Dillon's affidavit and the court finds no evidence in the proffered exhibits to substantiate it.

decide whether Rush, or any officer of FirstSouth, represented to the Dillons that their agreement was other than appears in the loan file.[3]

■ In the affidavit of Connie Wood, Assistant Asset Manager for the FSLIC, she states that the interest rate on construction loans to the Dillons as revealed from documents in the loan file was Bank of America prime plus 200 basis points, not to exceed the maximum rate permitted by law. She further states that neither she nor other senior personnel have knowledge of any agreement, written or oral, by which the Dillons were required to maintain an offsetting and compensating account of 10% of the loan balance—the Dillons' original theory for their usury claim. Moreover, the court can find no reference to the January 17, 1985, agreement in any of the loan documents nor can it find reference to any other agreement. *See* Exhibits "A–1" —"A–14" to the FSLIC's motion for summary judgment.

Accordingly, the court finds that the Dillons are estopped to assert their affirmative defense of usury based on agreements outside FirstSouth's records, that the FirstSouth loan documents do not support the Dillons' affirmative defense and that the FSLIC's motion to strike should be, and is hereby granted.

## II. The FSLIC's Motion for Summary Judgment against the Dillons and the Dillons' Motion to Amend

The FSLIC moves for summary judgment in this action to foreclose the notes, endorsements and mortgages attached to its motion as Exhibits "A–1"—"A–14," arguing that because of the *D'Oench* doctrine there are no longer any issues of material fact in dispute and that the Dillons

have no meritorious defense. In response the Dillons move to amend their pleadings to seek equitable rescission of the instruments based upon theories of misrepresentation, fraud, reliance and damage. These theories of relief are based upon the affidavit of Gerald W. Dillon, discussed in detail above.

■ For the same reasons the court concluded that the Dillons cannot assert their defense of usury against the FSLIC, the defenses of fraud and misrepresentation are similarly barred. Dillon's affidavit demonstrates that his theories of fraud and misrepresentation are based upon matters not found in the FirstSouth loan file. Therefore, the Dillons' motion to amend to assert these defenses must be denied.

■ Under the Supreme Court's decision in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the facts which are material for purposes of summary judgment are defined by the substantive law. The substantive law governing this case has been previously set forth above and in this court's order of December 16, 1987. To summarize, claims and counterclaims against an institution in FSLIC receivership are relegated to an administrative procedure with review in the federal courts under the Administrative Procedure Act. Additionally, defenses to a facially valid note in the hands of the Receiver are barred to the extent they are based upon agreements outside the institution's records.

This double-edged sword, referred to respectively by this court as the *Hudspeth* and *D'Oench* doctrines, works a harsh result here because the record shows that there may have been a series of misrepresentations made by the officers of First-

---

**3.** The test for application of the *D'Oench* doctrine is whether the parties lent themselves to a scheme whereby the note would tend to deceive the public authority by concealing the actual nature of the transaction. 315 U.S. at 459, 461, 62 S.Ct. at 681. The Dillons have signed facially valid notes and do not contest their authenticity. If they had in mind an agreement different from or in addition to the one they signed, but signed anyway, they must be charged with knowledge that they were aiding FirstSouth to

conceal the actual nature of the transaction. This is clearly not a case where it is alleged that bank officers altered documents after the fact or that the signatures on the documents had been forged, in which case *D'Oench* would probably not apply. *See FDIC v. McClanahan*, 795 F.2d 572 (5th Cir.1986). Nor is it a case where the Dillons are "wholly innocent" or "not negligent in failing to discover" the actual nature of the transaction. *See FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974).

South, yet the Dillons are precluded from asserting that as a defense to the uncontested facial validity of the notes held by the FSLIC. Because the true nature of the transactions may have been misrepresented to the Dillons, the court is reluctant to grant summary judgment in this case. However, the court is bound by precedent and must follow the law even where the result is a harsh one.

Accordingly, the court finds that there is no genuine issue of material fact for trial, that the validity and authenticity of plaintiff's Exhibits "A–1"—"A–14" are uncontested, that the FSLIC is entitled to judgment as a matter of law and that its motion for summary judgment against the Dillons should be, and is hereby granted. The FSLIC shall submit a proposed precedent for entry of judgment within ten (10) days of this order.

### III. The FSLIC's Motion to Dismiss Home's Counterclaim and for Summary Judgment against Home Federal

Home Federal Savings and Loan is a nominal defendant in this action and was included by order of consolidation only because it claims an interest in one of the lots sold by Rock Venture to the Dillons via FirstSouth financing. It is undisputed that FirstSouth advanced funds, and was given a purchase money mortgage by the Dillons in return for their acquisition of Otter Creek Community Lots 662 and 666. According to its counterclaim, Home subsequently loaned the Dillons money to construct a house on Lot 662, part of which was paid in consideration of the release by FirstSouth of its mortgage in Lot 662. Home further claims that the house was not built by the Dillons on Lot 662 as intended but rather was built on Lot 666 which was still mortgaged to FirstSouth. Home now seeks equitable relief from this court because the FSLIC is attempting to foreclose its lien on Lot 666, as improved with Home Federal's financing. Home has a first mortgage on unimproved Lot 662.

■ The FSLIC, in its capacity as Receiver for FirstSouth, argues that the court is without jurisdiction to grant the relief requested in Home Federal's counterclaim. The court agrees. Under 12 U.S.C. § 1729(d) the FSLIC, as Receiver, has power to

> settle, compromise, or release claims in favor of or against the insured institutions ... subject only to the regulation of the Federal Home Loan Bank Board....

Moreover, under 12 U.S.C. § 1464(d)(6)(C) no court may restrain or affect the exercise of powers or functions of a conservator or receiver, except at the instance of the Federal Home Loan Bank Board.

Resolution of even the facial merits of claims against the Receiver outside of the statutory reorganization process has been held to be a "restraint" within the meaning of § 1464(d)(6)(C). *North Mississippi Savings and Loan v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986); *Chupik Corp. v. FSLIC*, 790 F.2d 1269 (5th Cir.1986). And this court has consistently held that it has no jurisdiction over claims and counterclaims against an association under FSLIC receivership. *E.g., First Financial Savings and Loan v. FSLIC*, 651 F.Supp. 1289 (E.D.Ark.1987); *Dill v. FSLIC*, 678 F.Supp. 1404 (E.D.Ark.1988); *Pyle v. Louis*, No. LR–C–87–238, slip op. (E.D.Ark. July 23, 1987). *See also* the December 16, 1987, order entered in this case and citations therein.

Therefore, the court finds that Home Federal's counterclaim must be pursued in an administrative proceeding, that federal court jurisdiction over same can be exercised only under the provisions of the Administrative Procedures Act, 5 U.S.C. § 701–706, and that the counterclaim should be, and is hereby dismissed for lack of subject matter jurisdiction.

The court's rulings at this point leave for a determination only the question of whether the FSLIC is entitled to summary judgment against Home Federal on its claim to foreclose its lien on Lot 666, Otter Creek Community. The FSLIC argues that the *D'Oench* doctrine precludes Home Federal from relying on matters outside the loan documents in support of its equitable defense of mutual mistake and, therefore,

that there are no disputed issues of fact to preclude summary judgment. Home Federal responds that the *D'Oench* doctrine is wholly inapplicable to the facts of this case because the mistake involved here is obvious on the face of the loan documents.

 The court is of the opinion that the mistake involved here is not one which the bank examiners would have discovered from the face of the loan documents because they had no way of knowing on which lot, 662 or 666, the Dillons actually constructed the house for which Home Federal advanced funds. However, the court holds that the *D'Oench* doctrine does not estop Home Federal from asserting its defense of mistake to the FSLIC's foreclosure action because this is truly a case where the defendant, Home Federal, may be able to show that it is "wholly innocent" and "not negligent in failing to discover" the actual nature of the transaction. *See FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974).

Home Federal, just as the bank examiners, could not be expected to know on which lot the Dillons constructed the house. The Dillons represented to Home Federal that a house would be constructed on Lot 662 and they gave their mortgage on Lot 662 to Home Federal in consideration of funds advanced for that purpose. Additionally, part of these funds were paid to FirstSouth in exchange for FirstSouth's release of its mortgage on Lot 662. Home Federal in no way benefitted from the unfortunate turn of events by which the house was built on Lot 666, as Lot 666 was mortgaged to FirstSouth, and could not be said to have lent itself to a scheme whereby the public authority would tend to be mislead as to the true nature of the transaction. *See supra*, note 3.

Accordingly, the court finds that Home Federal is not estopped to defend against the FSLIC's foreclosure action on the theory of mistake,[4] that there are genuine issues of material fact which remain in dispute and that the FSLIC's motion for summary judgment against Home Federal should be, and is hereby denied.

---

4. Although Home Federal may defend against the FSLIC's foreclosure action, the court has no jurisdiction over an affirmative defense which seeks to enforce a lien against the property. *See supra*, note 2, and accompanying text.