**HOMES BY MICHELLE, INC., et al., Plaintiffs,**

v.

**The FEDERAL SAVINGS BANK, et al., Defendants.**

**Civ. A. No. 1:89–CV–1971–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 3, 1990.

Steve J. Davis, Charles Anthony Smith, Phears & Dailey, Norcross, Ga., for plaintiffs.

George William Long, III, Kirk W. Watkins, Parker Johnson Cook & Dunlevie, Atlanta, Ga., for Federal Sav. Bank.

James Tolbert Johnston, Jr., Hunter MacLean Exley & Dunn, Savannah, Ga., Timo-

thy J. Sweeney, Harman Owen Saunders & Sweeney, Atlanta, Ga., for Thomas Stacey.

Anthony L. Cochran, Chilivis & Grindler, Atlanta, Ga., for Bruce Milligan.

## ORDER

SHOOB, District Judge.

Amidst allegations of what the Court must term an unusual fraudulent financing scheme, plaintiffs have filed this suit seeking damages for banking violations, racketeering activity, and pendent state law claims. Defendants have filed separate motions to dismiss, all of which argue that the complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. A thorough review of the complaint and the numerous relevant statutes reveals the deficiencies of plaintiffs' federal claims. Under such circumstances, the Court cannot retain jurisdiction over the pendent state law claims and must dismiss plaintiffs' complaint in its entirety.

## I. FACTUAL BACKGROUND

Plaintiffs Warren E. Hanchey and Michelle M. Hanchey are respectively Secretary and President of plaintiff Homes By Michelle, Inc., a Georgia home-building company. Plaintiffs allege that they were contacted during the summer of 1987 by defendant G. Thomas Stacey ("Stacey"), a loan officer for defendant The Federal Savings Bank ("FSB"), concerning lot purchases at a residential subdivision known as Helmsley Place. Plaintiffs allege that Stacey told them that FSB was providing discounts to certain builders for purchases at the subdivision, because the Helmsley Place developer needed cash to overcome financial problems on a separate project financed by FSB.

Plaintiffs decided not to purchase any Helmsley Place lots because they could not afford to pay interest that would accrue on the property if the structures built there did not sell quickly. In response, according to their complaint, Stacey assured plaintiffs that FSB would finance both construction on the lots and any interest that accrued

prior to sale (referred to as "interest carry charges"). Given those assurances, plaintiffs agreed to purchase two Helmsley Place lots in November 1987, closed on the sale in May 1988, and received the promised discounts from Stacey shortly thereafter. Plaintiffs never received any construction financing from FSB, however, and, as a result, defaulted on acquisition loans they had received from FSB. FSB then foreclosed on the Helmsley Place property—and other properties owned by plaintiffs—during the summer of 1989.

Although the above description of the facts alleged in plaintiffs' complaint suggests a straightforward breach of contract or fraud action, this case is complicated because plaintiffs had neither a written contract nor a financing agreement with FSB, and because several third parties were involved in the Helmsley Place purchases. For reasons that are not clear, plaintiffs paid the deposit for the Helmsley Place lots in November 1987 to an organization known as Dom–Per, Inc. ("Dom–Per"). The draft was endorsed by defendant Bruce Milligan ("Milligan"), who was President of FSB. For reasons that also are not clear, the Helmsley Place lots were transferred by the Helmsley Place developer to The Buckhead Real Estate Partners ("BREP") and then transferred to The Lot Draw, Inc. ("Lot Draw") in May 1988, just before plaintiffs closed on the property. BREP apparently made a downpayment on the lots to the Helmsley Place developer one week after plaintiffs paid their deposit to Dom–Per.

Plaintiffs do not allege in their complaint that the involvement of the various non-parties to this suit in the Helmsley Place purchases clouded their title to the property. Indeed, even when construed in the light most favorable to plaintiffs, it is not clear what significance attaches to the activities of Dom–Per, BREP, and Lot Draw, other than creating the appearance of impropriety. The complaint does allege that the developers of Helmsley Place made payments to Milligan and Stacey in order to obtain financing for the sub-division and that BREP paid Lot Draw to serve as the "seller" during the closings involving plain-

tiffs. The complaint does not indicate, however, how these payments affected plaintiffs.

## II. PENDENT STATE LAW CLAIMS

Counts I through VI of plaintiffs' complaint state causes of action for violation of state law. Count I alleges that FSB breached an oral contract with plaintiffs by failing to provide the construction financing and interest carry charges promised by its agent Stacey. Count II alternatively alleges fraud in the inducement of that contract since Stacey knew that FSB would not provide such financing but represented on behalf of FSB that it would. Counts III and IV claim that FSB wrongfully foreclosed on plaintiffs' interest in the Helmsley Place lots and other properties FSB financed for plaintiffs and Count V alleges that FSB libelled and slandered plaintiffs through those foreclosures. Finally, Count VI states another fraud claim based on the unrecorded transfer of title from the Helmsley Place developer to BREP and FSB's refusal to provide plaintiffs funds for construction and interest carry charges at Helmsley Place.

■ Although the parol evidence rule may preclude plaintiffs from maintaining the breach of oral contract claim set out in Count I of their complaint—and each state law claim against FSB ultimately will depend on proof that Stacey and Milligan acted within their authority as agents for FSB in the Helmsley Place transactions— the Court is not required to address the sufficiency of the pendent state law claims at this juncture. While pendent jurisdiction is a doctrine of discretion, the Court cannot retain jurisdiction over well-pleaded state law claims if it dismisses the federal claims before trial. *See United Mine*

*Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Because the Court concludes that plaintiffs' federal claims must be dismissed, the Court will dismiss the pendent state law claims contained in Counts I through VI of their complaint without prejudice.

## III. BANKING VIOLATIONS

■ Count VII of plaintiffs' complaint alleges violations of several federal banking laws in conjunction with the Helmsley Place project. First, the complaint maintains that Milligan and Stacey received payments of an unspecified type from the Helmsley Place developer in exchange for financing from FSB in violation of 18 U.S.C. § 215 (Supp. V 1987). Second, the complaint claims that Milligan and Stacey made false entries in FSB's books and reports in an attempt to defraud plaintiffs in violation of 18 U.S.C. § 1005 (1982). Third, the complaint asserts that FSB made unspecified loans to Milligan and Stacey in violation of 12 U.S.C. § 375b(3) (1988). Based on these violations, plaintiffs maintain that they are authorized to bring a private cause of action against defendants pursuant to 12 U.S.C. § 503 (1988).

Even a cursory review of the applicable statutes should have revealed that FSB cannot be liable based on Count VII of plaintiffs' complaint. First, FSB cannot violate 18 U.S.C. § 215 (receipt of commissions or gifts for procuring loans) nor 18 U.S.C. § 1005 (bank entries, reports and transactions) since it is not an individual.[1] Second, FSB cannot be liable under 12 U.S.C. § 375b(3) since it is not a "member bank" of the Federal Reserve System.[2] Although plaintiffs protest that dismissal of Count VII on this latter ground would re-

---

**1.** 18 U.S.C. § 215 imposes criminal liability on anyone who offers or accepts a bribe in connection with loans from financial institutions. 18 U.S.C. § 1005 prohibits an officer, director, agent or employee of a financial institution from conducting unauthorized transactions or making false statements on behalf of the institution. Both statutes address individual conduct; neither statute creates any institutional liability.

**2.** 12 U.S.C. § 375b(3) prohibits member banks from making loans to their executive officers or directors except on terms substantially similar to those available for comparable loans to other persons. A member bank is "any national bank, State bank, or bank or trust company which has become a member of one of the reserve banks created by this Act." 12 U.S.C. § 221 (1988). As a federal savings bank chartered under 12 U.S.C. § 1464(a) (1988), FSB is not eligible for membership in the Federal Reserve System.

quire an inappropriate factual determination as to whether FSB is a member of the Federal Reserve System, the Court observes that plaintiffs did not (and could not) allege in their complaint that FSB is a member of the Federal Reserve System, which is an essential element of claims based on statutes that apply only to banks that are members of the Federal Reserve System. Finally, 12 U.S.C. § 503, the statute that plaintiffs rely on to state a cause of action for the various alleged violations, imposes liability only on directors and officers of member banks. Plaintiffs should not require the Court's assistance to realize that a federal savings bank cannot be a director or officer subject to liability under 12 U.S.C. § 503.

■ Similar problems arise concerning the liability of Stacey and Milligan under Count VII of the complaint. Although as individuals Stacey and Milligan could face criminal liability for any violations of 18 U.S.C. §§ 215 and 1005, neither statute authorizes a private cause of action. The only statute that provides a private cause of action for violations of 18 U.S.C. §§ 215 and 1005 is 12 U.S.C. § 503, which imposes personal liability against officers and directors of member banks for damages based on violations of the banking laws.[3] Because FSB is not a member of the Federal Reserve System, however, Stacey and Milligan are not subject to liability under 12 U.S.C. § 503. The Court therefore must concur with defendants that 12 U.S.C. § 503 does not provide express authorization for Count VII of plaintiffs' complaint. *Accord Lode v. Leonardo,* 557 F.Supp. 675, 678 (N.D.Ill.1982) (no private cause of action against officers and directors of nonmember banks under statute that requires non-member banks to comply with loan limitations governing member banks).

Plaintiffs nevertheless contend that the Court should imply a private cause of action against defendants based on the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. 101–73

("FIRREA"). Because FIRREA eliminated many regulatory distinctions between financial institutions, plaintiffs believe that officers and directors of all financial institutions should face the same liability for violations of the banking laws. The argument cuts both ways, however, because, if Congress agreed with the position advanced by plaintiffs, it could have amended 12 U.S.C. § 503 to authorize the private cause of action sought by plaintiffs.

The Court believes it would be inappropriate to imply the existence of a private cause of action not recognized by Congress in an area marked by recent, substantial legislative activity. The Court notes that legislative desire to regulate all financial institutions in a similar fashion does not evince a corresponding intent to allow the same private causes of action against all financial institutions. As the *Lode* court observed after a previous attempt to create uniform rules, "Congress created a system of regulatory remedies to enforce the [uniform] loan limitations it imposed but it did not adopt the express private rights of action it had previously created for abuses involving national banks and state member banks." *Id.* at 679. The Court will not recognize the implied right of action advocated by plaintiffs and will dismiss Count VII of their complaint with prejudice.

## IV. RACKETEERING ACTIVITY

Count VIII of plaintiffs' complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982) ("RICO"). Plaintiffs claim that, along with Dom–Per and BREP, defendants were associated with an enterprise engaged in interstate commerce. Plaintiffs further maintain that the enterprise operated through a pattern of racketeering activity, namely:

> the construction of several shell corporations designed to hide the Defendants' true identity; repeated violations of 18 U.S.C. § 215; repeated violations of 18 U.S.C. § 1005; repeated violations of 12

---

**3.** 12 U.S.C. § 503 also authorizes a private cause of action based on violations of 12 U.S.C. § 375b; however, as indicated in the preceding footnote, 12 U.S.C. § 375b does not apply to the transactions at issue in this case.

U.S.C. § 375(b); various tortious activities; and repeated violations of applicable state laws, including fraud.

Plaintiffs' Complaint at ¶ 79. Finally, plaintiffs state that these alleged racketeering activities violated RICO.

■■■ Although this Court, like numerous other district courts, now requires plaintiffs to complete a RICO case statement to assist the Court in evaluating their RICO claims, the Court can make that assessment in this case without a case statement. A cause of action under RICO "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). To have standing, a RICO plaintiff must also allege "that he has been injured in his business or property by the conduct constituting the violation." *Id.*[4]

■■■ As defendants indicate in their motions to dismiss, however, plaintiffs have not alleged any conduct that amounts to "racketeering activity" as defined by 18 U.S.C. § 1961(1) (Supp. V 1987). That statute provides an exhaustive list of acts indictable under federal law that constitute racketeering activity under RICO. Nowhere in that list of over fifty federal statutes, violation of which is a predicate act of racketeering activity under RICO, is any of the statutes relied upon by plaintiffs. In short, violations of 18 U.S.C. §§ 215 and 1005, and 12 U.S.C. § 375b, even if applicable to defendants,[5] do not support a cause of action under RICO.

In their consolidated opposition to defendants' motions to dismiss, plaintiffs attempt to skirt the glaring defects of their RICO claims by shifting their reliance to violations of code sections omitted from their complaint. Plaintiffs claim that they have stated a cause of action under RICO based upon alleged violations of 18 U.S.C. § 1956 (Supp. V 1987), *as amended by* Act of Nov. 18, 1988, Pub.L. No. 100–690, and 18 U.S.C. § 1957 (Supp. V 1987).[6] The inclusion of these new allegations does not cure the deficiencies of the original complaint, but it does require the Court to consider whether it should allow plaintiffs to amend their complaint.[7]

■■■ Under Rule 15(a) of the Federal Rules of Civil Procedure, leave of court or consent of the adverse party is required to amend a complaint once a responsive pleading has been filed. Although the rule states that leave to amend "shall be freely given when justice so requires", the decision whether to grant leave rests within the discretion of the trial court. *Shipner v. Eastern Air Lines*, 868 F.2d 401, 406 (11th Cir.1989). In exercising that discre-

---

**4.** While not the basis for dismissal of their complaint, the Court questions whether plaintiffs could meet this standing or "proximate causation" requirement if their complaint were otherwise sufficient. *See O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir.1989) (citations omitted). Plaintiffs adequately allege injury based on their breach of contract and fraud claims. But it is not clear how injuries "flow from the commission of the predicate acts" alleged under RICO. *Sedima*, 473 U.S. at 497, 105 S.Ct. at 3285.

**5.** As indicated previously, FSB could not be liable for violations of 18 U.S.C. §§ 215 and 1005 because it is not an individual and could not be liable for violations of 12 U.S.C. § 375b because it is not a member of the Federal Reserve System. The Court would be authorized to dismiss plaintiffs' RICO claim against FSB on this ground as well.

**6.** 18 U.S.C. § 1956 prohibits financial transactions that involve "proceeds of specified unlaw-

ful activity ... with the intent to promote the carrying on of specified unlawful activity; or ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1).

18 U.S.C. § 1957 prohibits participation in monetary transactions "in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). Criminally derived property "means any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2).

**7.** Although plaintiffs did not file a motion for leave to amend their complaint, they stated in their brief concerning the pending motions that the Court should grant leave to amend in the interest of judicial economy if the Court found their complaint defective. Absent such a suggestion, the Court would consider possible amendments *sua sponte* before dismissing the complaint.

tion, courts may deny leave to amend if "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1487 at 637 (1990). Likewise, "if a complaint as amended is subject to dismissal, leave to amend need not be given." *Pan–Islamic Trade Corporation v. Exxon Corporation,* 632 F.2d 539, 546 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981) (citations omitted).[8]

After carefully considering plaintiffs' argument that a RICO cause of action lies against defendants based on alleged violations of 18 U.S.C. §§ 1956–1957, the Court concludes that an amended complaint including this cause of action also would be subject to dismissal. Both 18 U.S.C. §§ 1956 and 1957 address what might be considered secondary criminal activity: conduct involving funds or property previously obtained by criminal means. Neither statute proscribes the underlying unlawful acts or what might be considered primary criminal activity. In this manner inclusion of 18 U.S.C. §§ 1956–57 in the definition of racketeering activity under RICO is logical. As this Court stated in an earlier decision:

> RICO prohibits, broadly speaking, second stage criminal activity. RICO does not punish or provide a remedy for murder, kidnapping, arson, or fraud. It punishes, or provides a remedy for, the operation—acquisition, investment, maintenance, or conduct—of enterprises *through* racketeering activity or as a *result* of racketeering activity.

*Friedlander v. Nims,* 571 F.Supp. 1188, 1194 (N.D.Ga.1983), *aff'd,* 755 F.2d 810 (11th Cir.1985) (emphasis in original). Plaintiffs' proposed RICO claims fail because they merely restate and/or extrapolate from their breach of contract and fraud claims; they do not involve the sec-

ond stage criminal activity proscribed by 18 U.S.C. §§ 1956–57 and prohibited by RICO.

Plaintiffs' proposed RICO claims based on 18 U.S.C. §§ 1956–57 derive from their allegations that Stacey and Milligan received payments or kickbacks from the Helmsley Place developer in exchange for financing for the Helmsley Place subdivision. Such allegations, assumed to be true for purposes of a motion to dismiss, constitute violations of 18 U.S.C. § 215.[9] As a result, plaintiffs claim (1) that financing for the Helmsley Place subdivision represents the proceeds of unlawful activity, so transactions involving the property violate the money-laundering provisions of 18 U.S.C. § 1956; and (2) that the subdivision is criminally derived property with a value greater than $10,000, so transactions involving the property violate 18 U.S.C. § 1957.

The Court seriously doubts whether the activity alleged in this case involves money laundering prohibited by 18 U.S.C. §§ 1956–57. Although the Court is not aware of any authority construing the statutes, the Court believes that the proceeds from violations of 18 U.S.C. § 215, from a money-laundering perspective, would be kickbacks Stacey and Milligan received in exchange for the Helmsley Place loans, not the loans themselves. As stated earlier, money-laundering statutes prohibit subsequent transactions in funds produced through criminal activity. It is difficult to apply the statutes to loan kickback schemes, since money flows in both directions. But by considering other situations where money laundering occurs, for example drug trafficking, bribery, and kidnapping, it becomes clear that kickbacks are the subject matter addressed by 18 U.S.C. §§ 1956–57 where the underlying criminal conduct involves violations of 18 U.S.C. § 215.[10]

The Court's construction of 18 U.S.C. §§ 1956–57 draws further support from the

---

**8.** In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all cases decided by the Fifth Circuit before September 30, 1981.

**9.** Under both 18 U.S.C. §§ 1956 and 1957, "specified unlawful activity" includes payment of

commissions or gifts for procuring loans in violation of 18 U.S.C. § 215.

**10.** Kickbacks serve a function analogous to drug payments, bribes, and ransoms, which represent the financial proceeds from drug trafficking, bribery, and kidnapping.

language of 18 U.S.C. § 215, which imposes criminal liability against anyone who:

> (1) corruptly gives, offers, or promises anything of value, with intent to influence or reward an officer, director, employee, agent, or attorney of a financial institution in connection with any business or transaction of such institution; or
>
> (2) as an officer, director, employee, agent or attorney of a financial institution, corruptly solicits or demands for the benefit of any person, or corruptly accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution.

18 U.S.C. § 215(a). Since the statute proscribes the payment or receipt of kickbacks, it follows that the proceeds from the prohibited activity are the kickbacks. The Court therefore holds that, if plaintiffs amended their complaint, they still could not allege the predicate acts of racketeering activity necessary to state a cause of action under RICO.

■ Even assuming that plaintiffs could allege the required predicate acts of racketeering activity, however, the Court must strain to find the continuity required to sustain a RICO claim. To allege a pattern of racketeering activity, plaintiffs must allege "more than one racketeering activity and the threat of continuing activity." *Bank of America National Trust & Savings Assn. v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986). With regard to this continuity requirement, the Supreme Court recently stated:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct

do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989) (citations omitted). Under either definition of continuity, plaintiffs have not satisfied the requirements of the *H.J. Inc.* decision.

■ The Court finds that plaintiffs have not alleged a closed period of repeated conduct in violation of RICO because the alleged racketeering activity in this case related only to the development of the Helmsley Place project and took place over a short period of time. Even if the Court construes the relevant time period to extend from the initial contacts with Stacey through the foreclosures two years later, plaintiffs have not alleged injury to other parties during that period or any other form of repeated criminal conduct.

The Court also finds that plaintiffs have not alleged past criminal conduct that projects into the future because plaintiffs do not allege a pattern of racketeering activity involving other real estate projects, nor do they allege that any improprieties continued over a long period of time or into the future. Plaintiffs merely state that defendants could conduct continuing racketeering activity, without providing any basis for finding a threat of continued racketeering activity.

The Court recognizes that under *H.J. Inc.* and *Touche Ross* plaintiffs do not need to allege more than a single fraudulent scheme. *H.J. Inc.*, 109 S.Ct. at 2901; *Touche Ross*, 782 F.2d at 971. Plaintiffs still must allege a pattern of prohibited activity within that scheme, however, and their failure to do so requires dismissal of their cause of action under RICO. The Court therefore will dismiss Count VIII of their complaint with prejudice.

## V. CONCLUSION

Although plaintiffs vehemently argue that this case should proceed in federal court, the fervor of their language does not conceal the weaknesses of their federal claims. Plaintiffs may possess valid state

law claims based on (1) alleged false representations by Stacey; (2) refusal by FSB to provide financing for plaintiffs' Helmsley Place construction; and (3) foreclosures by FSB on properties owned by plaintiffs. But plaintiffs' attempt to bring this suit in federal court reflects misapplication of the federal banking laws and approaches abuse of the RICO statute, which the Court cannot abide.

The Court therefore GRANTS the motions to dismiss filed by the defendants. The Court DISMISSES WITHOUT PREJUDICE Counts I through VI of plaintiffs' complaint and DISMISSES WITH PREJUDICE Counts VII and VIII of plaintiffs' complaint.

IT IS SO ORDERED.