**Edward K. MERY and Jamil M. Karam, Plaintiffs,**

v.

**UNIVERSAL SAVINGS ASSOCIATION, C.F. Kendall, II, L. Dean Pickney, Sr., James D. Purdom, Jr., Michael L. Blanchard, and M.L. Schehin, Defendants.**

**Civ. A. No. H–89–0006.**

United States District Court,
S.D. Texas,
Houston Division.

May 14, 1990.

Tom Joseph, P.C., Kay A. Elsasser, San Antonio, Tex., for plaintiffs.

Calvin, Dylewski, Gibbs, Maddox, Russell & Verner, David T. Maddox and Brigid D. Ashcraft, Houston, Tex., for defendants.

## SUMMARY JUDGMENT

HOYT, District Judge.

Pending before the Court is the defendant, Universal Savings ("Universal"), motion for summary judgment. This Court must determine the validity of the plaintiffs' allegations in a somewhat unremarkable, yet allegedly dishonest fraudulent financing scheme. After careful consideration of the motion, responses, and the relevant statutes, this Court finds that summary judgment as to the Resolution Trust Corporation is appropriate.

This case involves several transactions which the plaintiffs contend were predicated upon the fraud and deceit of the defendants. On March 5, 1987, Universal filed suit in state court to collect deficiencies due and owing on four promissory notes against the plaintiffs, Edward K. Mery ("Mery") and Jamil M. Karam ("Karam").

That collection case, which involves the same individuals, entities, facts, and issues, has been transferred and consolidated with this suit (Civil Action No. 89–1184). These two cases are also related to cases filed in the Northern District of Texas; however, these cases are not significantly related to the present case such that a discussion of them is warranted.

The questions presented to this Court are whether the alleged claims and defenses of the plaintiffs are barred by the *D'Oench, Duhme* doctrine and if so, whether the plaintiffs' RICO claim survives *D'Oench, Duhme* or is otherwise moot.

The plaintiffs in this case are businessmen whose business is real estate development. The defendants are a failed Bank, its officers and agents and Pickney, a businessman who was previously associated with the plaintiffs as a limited partner. The plaintiffs filed this suit on January 3, 1989, alleging negligence, breach of fiduciary duty, breach of contract, common law fraud, statutory fraud, unjust enrichment, and usury as well as several violations of the Racketeer Influenced Corrupt Organizations ("RICO") Statute, 18 U.S.C. §§ 1961–1966. The plaintiffs further allege that the defendants have engaged in acts indictable under the Federal Mail Fraud Statute, 18 U.S.C. § 1343.

Three days before the plaintiffs filed this suit, Universal was taken over by the Federal Savings & Loan Insurance Corporation ("FSLIC"). FSLIC was abolished when Congress passed the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). The RTC succeeded FSLIC as conservator or receiver with respect to any institution for which FSLIC was appointed conservator or receiver during the period beginning January 1, 1989 and ending August 9, 1989. P.L. No. 101–73 § 501, 103 Stat. 363, 370 (1989). This Court's federal jurisdiction is predicated on the RTC becoming conservator of Universal, as well as the RICO allegations.

Factual Background

On February 28, 1985, the defendant, Pickney, arranged with Universal and a number of its officers, specifically Blanch-

ard, Purdom, Kendall (the Chairman of the Board and Chief Executive Officer), and Schehin, to refinance a 52–acre tract of land in Mesquite, Dallas County, Texas, which was owned by the plaintiffs. (Schehin, who is in bankruptcy, was severed from this cause by order of this Court on December 1, 1989). During this time, in order to effectuate the refinancing of the 52–acre tract Mery, Karam, and Pickney formed a limited partnership called Valley Plaza Partners, Ltd. The partnership then went to Universal and executed a Promissory Note dated February 28, 1985, in the original principal amount of $6,828,900, which sum was secured by a deed of trust. On March 1, 1985, $3,985,367 was drawn from this note for payment of the existing liens on the property. This put Universal in a first lien position. Two other notes were also subsequently executed by the Valley Plaza Partners in the amounts of $363,500 and $1,200,000. All three notes have deficiencies after foreclosure.

Some months later, the plaintiffs, as representatives of "Peek 85," another joint venture for the purpose of real estate development, executed a fourth note at Universal in the amount of $4,300,000. The Peek 85 note also remains unpaid. It appears from the evidence that Mr. Pickney orchestrated the execution of these four notes.

## Parties Allegations

The RTC alleges in its motion for summary judgment that the *D'Oench, Duhme* doctrine and its progeny protects it from claims or defenses which may be asserted against a failed financial institution that the RTC has been taken over. The defendants allege further that they have not raised any claim for relief or any defense which falls outside the protection afforded Universal by virtue of *D'Oench*, that there is no issue of material fact, and that summary judgment is proper as a matter of law.

The plaintiffs' claims against the defendants are breach of good faith, breach of fiduciary duty, common law fraud, negligence and gross negligence, statutory fraud and usury. Specifically, the plaintiffs allege that Universal conspired with other defendants especially Pickney, to permit the unauthorized withdrawal of monies from the Valley Plaza Project and that the defendants entered into a scheme to defraud Mery and Karam. Therefore, the plaintiffs allege, these acts by the defendants provide defenses to payment on the notes. The plaintiffs also argue that neither *D'Oench* nor 12 U.S.C. § 1823(e) bars the plaintiffs' claims or defenses.

In response, Universal argues that the plaintiffs have breached their contracts with Universal with respect to the four separate promissory notes and asks this Court to enter judgment with respect to these notes.

## Summary Judgment

The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is authorized if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Rule 56(c) requires the district court to enter summary judgment if the evidence favoring the nonmovant party is not sufficient for a jury to enter a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.... Only disputes over facts that affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. Therefore, the preliminary question for the Court to answer is "not whether there is literally no evidence, but whether there is any upon which a jury could prop-

erly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (citations omitted).

The D'Oench, Duhme Doctrine

■ The *D'Oench, Duhme* doctrine teaches that a debtor who lends himself to a scheme or arrangement tending to mislead bank examiners cannot raise any term or condition of that scheme or arrangement as a defense against the FDIC in a suit on a note. *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). This doctrine operates as a rule of estoppel that prevents those who give notes to federally-insured institutions from raising defenses based on alleged side agreements made with the officers of failed banks with regard to the enforceability of promissory notes. *FSLIC v. Murray,* 853 F.2d 1251, 1255 (5th Cir. 1988). The doctrine not only encourages debtors to insist that all loan terms be recorded in bank records, but it also reflects the equitable principal that if a loss is to be incurred as a result of any unrecorded arrangement, the loss should not fall on the lending institution but rather the maker of the note. *Id.*

Whether the plaintiffs can raise defenses to Universal's claim for payment of the notes depends on whether the plaintiffs' (borrowers) lent themselves to a scheme or arrangement that tended to defeat the right, title or interest of the bank, whereby banking authorities are likely to be misled. *D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 680. In *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Court stated:

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counter-promise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

*Id.* at 93, 108 S.Ct. at 402. The Fifth Circuit has stated that a bank would be misled if there was an oral side agreement

"reducing the value of assets formerly held by the bank." *Beighley,* 868 F.2d at 784. This reasoning applies in a case where the plaintiff alleges claims of self dealing and wrongdoing by the officers and directors of a federal bank.

■ It is this Court's opinion that the plaintiffs' argument that there is no secret side agreement from which to apply the *D'Oench, Duhme* doctrine completely misses the mark. The plaintiffs' complaint states that Pickney fraudulently conspired with the officers of Universal when the Valley Plaza loans were executed. If Mery and Karam did not know about these alleged conspiracies, they were, by definition, secret side agreements. What the plaintiffs fail or refuse to see is that while Pickney made his secret side agreement with Universal and its agents, Pickney was acting on behalf of the partnership. It is a fundamental principle of agency and partnership law that all partners of a limited partnership are jointly and severally liable for a partner's wrongful acts and breaches of trust. *See* Tex.Rev.Civ.Stat.Ann. art. 6132a, § 15 (West 1970). Moreover, 12 U.S.C. § 1823(e) provides that:

> (e) AGREEMENTS AGAINST INTERESTS OF CORPORATION.—No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.[1]

■ The Plaintiffs have presented no evidence that the Board of Directors of the Bank ratified, condoned or approved the actions of the defendants in this case. Clearly, the alleged agreement "tends to diminish or defeat the interest of the corporation...." 12 U.S.C. § 1823(e). The plaintiffs' argument that Universal allowed Pickney to wrongfully withdraw the funds after the note was signed is also meritless. Once a Limited Partnership has given actual or apparent authority to the limited partner, a bank cannot be required to act as "referee" for the partnership.

Various courts have determined that the following defenses are not applicable against the FDIC, FSLIC or their successors:

(A) Fraudulent Inducement. *Federal Sav. & Loan Ins. Corp. v. Lafayette Invest. Properties, Inc.*, 855 F.2d 196 (5th Cir.1988).

(B) Fraud and Misrepresentation. *Federal Sav. & Loan Ins. Corp. v. Dillon Constr. Co.*, 681 F.Supp. 1359 (E.D.Ark.1988).

(C) Failure of Consideration. *Federal Deposit Ins. Corp. v. McClanahan*, 795 F.2d 512 (5th Cir.1986).

(D) Duress. *In re Cerar*, 84 Bankr. 524 (C.Dist.Ill.1988).

(E) Secret Side Agreement. *Gulf Federal Savings & Loan Assn. v. Mulderig*, No. 87–3503, 1989 WL 23790 (E.D.La. March 10, 1989).

(F) The Duty of Good Faith and Fair Dealing. *Federal Sav. & Loan Ins. Corp. v. Locke*, 718 F.Supp. 573, 582 (W.D.Tex.1989).

(G) Breach of Fiduciary Duty. *Federal Savings & Loan Ins. Corp. v. Locke*, 718 F.Supp. 573, 582 (W.D.Tex.1989).

(H) Usury. *Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156 (6th Cir.1985).

(I) Negligence and Gross Negligence. *Mainland Sav. Ass'n. v. Riverfront Associates, Ltd.*, 872 F.2d 955 (10th Cir.1989).

(J) Statutory Fraud under Tex.Bus. & Com.Code Ann. § 27.01. *Beighley v. Federal Deposit Ins. Corp.*, 676 F.Supp. 130 (N.D.Tex.1987).

(K) Unjust Enrichment. *Federal Sav. & Loan Ins. Corp. v. Murray*, 853 F.2d 1251 (5th Cir.1988).

Therefore, the Court finds that the plaintiffs' claims against Universal are barred not only under the *D'Oench, Duhme* doctrine but also under 12 U.S.C. § 1823(e).

RICO Allegations

Count one of the plaintiffs' complaint alleges several violations by the defendants of the RICO statutes. The defendants allege that the plaintiffs have not satisfied the elements for a RICO cause of action. Specifically, that the plaintiffs have not alleged any conduct that amounts to racketeering activity as defined by 18 U.S.C. § 1961(1) (Supp. V 1987).

To overcome the defendants' summary judgment motion, the plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedina, S.P.R.C. v. Inrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The plaintiff must then satisfy the following standing requirement: "The plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property, by the conduct constituting the violation." *Id.*

■ In order for the plaintiffs to validly plead a RICO cause of action, the plaintiffs must allege "more than one racketeering activity and the threat of continuing activity." *Bank of America National Trust & Savings Ass'n v. Touche, Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986) (held: "two isolated acts of racketeering activity do not constitute a pattern." *Id.*).[2] See also, *Montesano v. Seafirst Commercial Corp.*,

---

**1.** This statute is a codification of the common law doctrine of *D'Oench, Duhme.*

**2.** This Court notes that the plaintiff failed to state in his complaint a time period in which the alleged racketeering took place. The Court will assume that it took place at least from February 1985 to June 1985.

818 F.2d 423 (5th Cir.1987). Something more is required.

The Supreme Court's recent discussion in *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989), of the continuity concept gives this Court direction. The Court stated:

> "Continuity" is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long term criminal conduct.

In *Homes by Michelle, Inc. v. Federal Savings Bank*, 733 F.Supp. 1495 (N.D.Ga. 1990), the Court finding no solid RICO cause of action stated:

> The Court also finds that plaintiffs have not alleged past criminal conduct that projects into the future because plaintiffs do not allege a pattern of racketeering activity involving other real estate projects, nor do they allege that any improprieties continued over a long period of time or into the future. Plaintiffs merely state that defendants could conduct continuing racketeering activity, without providing any basis for finding a threat of continued racketeering activity.

■ The Court finds that there is no evidence from which an inference can be drawn, that the Bank, in its corporate status, acted as an enterprise to conspire with the other defendants, such that the required predicate acts of racketeering can be met. Even if this Court accepted the plaintiffs' allegations as true, there is no evidence that a "threat of repetition" looms in the future. In fact, since Universal has been "taken over" by the government, the plaintiffs' arguments are wholly without force. The alleged acts of wrongdoing of the Bank itself cannot be imputed to the government when there is no evidence that the FDIC had knowledge of the alleged fraud. *See Gunter v. Hutcheson*, 674 F.2d 862, 873 (11th Cir.) *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63, *reh'g* denied, 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982). In short, the plaintiff's RICO claims also derive from an oral side agreement which are barred by *D'Oench* and its progeny.

It is therefore ORDERED that the plaintiffs' RICO claim is moot and that RTC's motion for summary judgment be GRANTED.

It is further ORDERED that the RTC have judgment against Edward K. Mery and Jamil M. Karam, jointly and severally, on the deficiency due on each of the promissory notes for:

1. Actual damages in the sum of $6,714,851.87, which represents the balance due on the three Valley Plaza Notes as of March 8, 1989;

2. Interest which has and continues to accrue on the three notes since March 8, 1989 at the rate of 12.5% or $2,325.70 per diem;

3. Actual damages in the sum of $5,622,788.40, which represents the balance due on the Peek 85 Note as of January 19, 1990;

4. Interest which has and continues to accrue since January 20, 1990, at the rate of 12.5% or $1,731.82 per diem;

5. Post-judgment interest at 8.23% per annum; and

6. Reasonable and necessary attorneys' fees in the amount of $216,000.

It is further ORDERED that a take nothing judgment is entered as to the cross-claims of the defendants as against Universal.

This is a FINAL JUDGMENT as to Universal Savings Association. Cause No. H–89–1184 is CLOSED. Cause No. H–89–0006 remains open as to the remaining parties and claims. The plaintiff is to amend his pleading within 30 days realigning the parties.

The conditional motion of the defendant Kendall to file a responsive pleading is now MOOT.